# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE
# CIVIL ACTION NO. 3:08CV-31-H

DWAYNE RAY                                                                            PLAINTIFF

v.

DR. LINK OF MARION ADJUSTMENT CENTER *et al.*                       DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on preliminary review of Plaintiff Dwayne Ray's *pro se* civil complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

## I.

As Defendants Plaintiff names Dr. Link of Marion Adjustment Center; Marion Adjustment Center; "Commonwealth of Ky. Correction"; Department of Mental Health; Jamie, the unknown host and inmate within the Kentucky Department of Corrections; and Dr. White. He also lists the following as conspirators with Defendants: Kentucky State Reformatory, Green River Correctional Complex, SAP (presumably the Substance Abuse Program), and Nurse Station at Marion Adjustment Center.

Plaintiff claims that a Behavior Modification Device was implanted in his right ear lobe at Marion Adjustment Center on the instruction of psychologist, Dr. Link. More specifically, he reports as follows:

> I woke one morning with a right ear bleed after a day I went to the doctor there and when I seen the nurse there I notice she was pushing down through my ear lobe very roughly.[1]

---

[1] A subsequently filed letter indicates that the Behavior Modification Device was placed in his ear in 2003 by nursing staff at Marion Adjustment Center (DN 6).

Before this incident happen I went to see a psychologist by the name of Dr. Link for reasons of [illegible] of family member and personal items, as well as to ask a few questions about a medicine for my alcohol problem of my past. I also attended SAP at that time.

After seen the doctor, a chain of weird events start taking place. Like for some weird reason they was trying to put me in a bad physiological state. It seemed as over half of SAP population was playing this game for some reason unheard of.

Also, in SAP there was this fellow whom I roomed with that keep trying to get me kicked out of SAP! I seemed racial from hearing a few of his phone calls home about trying his best to get me kicked out.

After I completed SAP I was sent to Green River Correction Center for no reason told of. But something seemed off because SAP shipped me without a certificate and refused to release to me till after I seen the Parole Board, which I seen in March 2004, at K.S.R. were I was sent for an e[]valuation.

While in C-wing lock down I was sprayed with an water down a chemical through the vent system that burned me skin for many nights. Then for about a week I was put in another room and while I rested a form chemical was sent through the vent.

To pass on, it came to me by a high pitch ringing noise in my right ear that some kind of monitoring device was placed in my right ear for no reason nor consent spoking to me by Dr. Link at Marion Adj. Center nor no one else.

There's a host in monitoring device that a prisoner of Comm. of Ky. That even today has v[io]lated about all of my const. rights, . . .

Plaintiff claims that the "host" of the device, Jamie, uses the device, effectively, to control every aspect of Plaintiff's life. For instance, he claims that Jamie "mess up my life by trying to get me put out of college, and mess up my employment" and allows "people to hear or read my thoughts to embarrass me of my past and shows pictures that doesn't ever cross my mind or thoughts." He additionally contends that Jamie uses the device to "pull on my left hemisphere to block my concentration of reading thoughts, thinking during school testing and studying." Plaintiff alleges that if he does not allow Jamie to do what Jamie wants then Jamie will set Plaintiff up to return to prison.

2

Based on the foregoing, Plaintiff alleges violations of the First, Second, Third, Fifth, Eighth and Ninth Amendments to the U.S. Constitution and of his rights of confidentiality and of privacy of thoughts and self-ideas; a conspiracy to rape, blackmail, and entrap; and various state-law claims. As relief he asks the Court to "Bring about a civil law suit against Commonwealth of Ky. Corrections & Dept. of Mental Health; and Inmate Jamie"; "Uph[o]ld Justice on behalf of complaints against Jamie Unknown; Dr. Link; Dr. White; Commonwealth of Ky. Corrections Department of Mental Health; and "Find Party(s) responsible to False Employment of Behavior Modification Device (Owner of) and Bring to Tr[ia]l For Violations of such."

## II.

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e)(2); *McGore*, 114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

> The *in forma pauperis* statute, unlike Rule 12(b)(6), "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." "Examples of the latter class," we said, "are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar."

*Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)). "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33.

The Court has carefully reviewed Plaintiff's complaint and concludes that it is clearly baseless for those very reasons. The complaint is precisely the type of "fantastic," "delusional" and "incredible" allegations that warrant dismissal as factually frivolous. Plaintiff's complaint is nothing more than a collection of totally unsubstantiated events compiled by an individual who believes that various things are happening to him, which simply are illogical and incredible. *See Knight v. Foxworth*, Civil Action No. 6:07cv70, 2007 WL 2427769, at *3 (E.D. Tex. Aug. 22, 2007) ("In this case, it is apparent that Knight's claims of monitoring by unseen enemies via computer, through the plumbing and air vent in his cell, are irrational and wholly incredible."). It is clear that the Court is not the forum that can provide Plaintiff with the type of assistance he truly needs. Plaintiff's allegations are simply based on some fantasy and unsupported imaginings that Defendants are controlling his mind and resulting behavior.

The Court advises that this is the third action Plaintiff has filed with respect to the alleged implanted Behavior Modification Device. By Memorandum Opinion and Order entered November 14, 2007, the Court dismissed the first action for failure to prosecute and, alternatively, as frivolous under *Neitzke*. *See Ray et al. v. Dr. Link et al.*, Civil Action No. 3:07CV-228-H. The Court dismissed the second action by Memorandum Opinion and Order entered August 15, 2008, on the bases of Eleventh Amendment immunity and frivolity under *Neitzke*. *See Ray v. Commonwealth of Ky. Corr. Dep't of Mental Health*, Civil Action No. 3:07CV-340-S. Plaintiff appealed neither action. Accordingly, most, if not all, of the claims raised in the instant action are also barred by the doctrine of res judicata. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (listing four elements of res judicata: (1) a final decision on the merits; (2) a

subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action).

By separate Order, the Court will dismiss the instant action as frivolous and as barred by res judicata.

Date: July 13, 2009

**John G. Heyburn II, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
4412.005